Theresa H. Phillips
vs.
Centredale Worsted Mills } W.C.A.No.611

March 5, 1926.

TANNER, P. J. This is a petition for compensation under the Workmen's Compensation Act.

The petitioner struck her leg against a portion of the machine which she was operating. While she suffered some temporary pain and discomfort at the time, she did not find out that she was seriously injured until three weeks thereafter. She did not give written notice of said accident to her employers but on September 28th, within thirty days after the accident, she reported the accident to her employers and was directed by them to seek medical advice. Such direction, we think, would be in the nature of a waiver of notice upon the part of the employers. At any rate, we think that a failure to give notice under such circumstances would amount to the accident or mistake named in the statute as an excuse for not giving written notice under the liberal construction of the words "accident or mistake" in the case of Donahue vs. Sherman Sons Co., 39 R. I. 373. The petitioner might naturally think that, having orally reported the accident and having been told by her employers to go to a doctor, she was excused from giving written notice and that failure to do so might well be considered an accident or mistake. We think that the petitioner may be excused from not having stopped work to give her leg complete rest until the 17th of October, so that the first period of compensation may be extended to that time. The time from the 17th of October until she actually did stop work should be excluded. She should be further compensated from the time that she actually stopped work until two weeks after the 23rd of February, the 23rd of February being the time when her doctor says that she had completely recovered. We think she was justified in following the advice of her doctor on that point.

Compensation should be at the rate of $7 a week for the time indicated.

For Petitioner: E. H. Ziegler.

For Respondent: Greenlan, Tilley and Tetton.

---

Helen A. Sleeper
vs.
William G. Rich } N..64620

March 12, 1926

SUMNER, J. Plaintiff has brought suit to recover a sum of money claimed to have been loaned to the defendant. The jury returned a verdict for the plaintiff in the sum of $1090, and defendant has filed his motion for a new trial on the usual grounds, and also alleging that a document, not in evidence, prejudicial to the defendant was communicated to the jury while they were considering their verdict.

The plaintiff, Mrs. Sleeper, testified that she had been acquainted with the defendant Rich ever since he was a child, was on intimate terms with him and his wife, and had also employed him as an attorney; that on December 16, 1921, she loaned him the sum of $1000; that he agreed to pay her interest on it; that he subsequently gave her a deed of a piece of real estate to hold as secruity for the loan and that later this deed disappeared at a time when the defendant's wife was in plaintiff's house; that the defendant paid her interest on the loan up to June 1924. A clerk in the bank testified that the plaintiff withdrew the sum of $1000 on December 16, 1921. Another witness, named Ballou, testified that in De-

cember 1923, while he was at her house on an errand, Mr. Rich came in and paid Mrs. Sleeper some money, saying: "I have come to pay some interest." He thinks the amount was $30.

The defendant Rich denied receiving the money and offered two papers in evidence in contradiction of plaintiff's testimony, one a receipt for $10, purporting to be signed by Mrs. Sleeper, and another a note given to Mrs. Rich for the sum of $1200. Mrs. Sleeper declared that her name was forged to both of these papers, saying that they looked like her signatures but that the writings in both cases had apparently been inserted over the signatures.

Mrs. Sleeper, a woman 75 years old, was an intelligent witness and made a good appearance. It was a question of veracity between the witnesses for the two parties, and the Court believes that the jury were justified in bringing in a verdict for the plaintiff.

The defendant claims misconduct on the part of the jury and offers the affidavit of one George J. Wheelock. The affiant says that he was in the court room in Woonsocket when the jury came in about 12:30 P. M.; that after the jury had given their verdict and been dismissed, he went to a water-closet on the same floor with the court room, and coming back from it discovered sheets of typewritten paper lying on the floor of the jury room five feet from the door; that he picked them up, read some of them, and when he got a chance showed the paper to Mr. Rich, who read it through, handed it back to him and asked him to hold it. Mr. Rich makes an affidavit as to Wheelock showing this paper to him at the time. Mr. Walling, the attorney for the plaintiff, makes a counter affidavit identifying the paper in question as his office copy of a complaint made to the Supreme Court

against Mr. Rich by Mrs. Sleeper, which paper had been with his other papers on the plaintiff's table in the court room while he was using them in the trial of the case. He denies that he had anything to do with putting it in the jury room and states that Mr. Rich sat at the plaintiff's table during the whole of the trial (a fact noted at the time by the Court.)

Waldo S. Cook, foreman of the jury, makes a counter-affidavit that the paper entitled "Complaint" was not in the jury room at any time during their consideration of the case and that he looked around carefully just before the jury returned with their verdict. Mr. Rich makes an affidavit in rebuttal denying that he ever took or had this paper in his possession except as stated in his first affidavit.

Defendant questions the admissibility of the affidavit of the foreman of the jury.

Our Supreme Court has held that affidavits of jurors are not admissible to impeach their verdict.

See Phillips vs. R. I. Co., 31 R. I. 26.

In that same opinion the Court cites cases in New Jersey and Vermont deciding, however, that affidavits may be read to exculpate the jurors and sustain their verdict.

Cyc. Vol. 29, page 989, says that affidavits of jurors are admissible to disprove alleged bias, or prejudice, or misconduct.

The Court had no opportunity to see or examine Mr. Wheelock and find out what sort of a man he was. The Court would have liked to know why he was waiting around the court house. Why did he give such a paper to Mr. Rich, evidently being a complaint made against him? Why did he not give it to a court officer? Why did he say nothing about it to the Court or anybody else but Mr. Rich, and why did he take a paper away that did not belong to him and

without making any further inquiry about it?

There is an entrance to the water-closet from the corridor but it is kept locked, as the water-closet is attached to the jury room. If Mr. Wheelock went through the jury room to go to the water-closet, why did he not see the paper then if it was there, or if by chance the corridor door was unlocked, why did he go into the jury room at all and find this particular paper five feet from the door, unless he was looking for something? The water-closet is so situated that one passing from it through the corridor would not be apt to look into the jury room. He would have to turn his head sharply to the left in order to do so.

The conduct of Mr. Rich is inexplicable. If the paper was shown him as he says, why did not he, a member of the bar and so an officer of the court, take up the matter with the Court at once or even within a day or two as involving a most serious charge, that of tampering with the jury? The Court could have made a full inquiry then when the matter was fresh and the facts easily accessible. His conduct would seem lacking in candor and good faith. His attorney, Mr. Churchill, returned to Providence at the conclusion of the trial.

Mr. Walling is a level-headed, reputable member of the bar, and it is inconceivable that he had anything to do with placing this paper in the jury room, and Mr. Churchill expressly exonerated him from that charge. The notes of the Court show that the jury brought in their verdict at 12:21 and that the Court recessed at 12:40, so that there was nearly 19 minutes within which the paper might have been "planted" there. It may be said that the so-called complaint or paper was merely a summary of Mrs. Sleeper's case against Mr. Rich. It made no charges of fraud or forgery such as she testified to on the stand.

The Court does not believe that the plaintiff or her attorney had anything to do with putting this paper in the jury room. It believes that it was "planted" there after the jury had left the room.

Accordingly the defendant's motion for a new trial is denied.

For Plaintiff: Walling & Walling.
For Defendant: Wilson, Churchill & Curtis.